AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Kansas

FILED
U.S. District Court
District of Kansas

MAY 06 2021

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. 21-M-6075-01-KGG |
| the residence and devices located at 1770 S. Rock Road, Apt. 1109, Wichita, Kansas, as further described in Attachment A | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

the residence and devices located at 1770 S. Rock Road, Apt. 1109, in Wichita, KS, as described in Attachment A

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252/2252A | Offenses relating to the Possession/Distribution of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Campbell, SA, FBI
*Printed name and title*

Sworn to before me and signed ~~in my presence~~ . telephonically.

Date: 5-6-21

_____
*Judge's signature*

City and state:  Wichita, KS

The Honorable Kenneth G. Gale, US Magistrate Judge
*Printed name and title*



# UNITED STATES DISTRICT COURT

for the

District of Kansas

IN THE MATTER OF THE SEARCH OF:
THE RESIDENCE AND DEVICES AT
1770 S. ROCK ROAD, APT. 1109
WICHITA, KS 67207
as further described in Attachment A

Case No. 21-m-6075-01-KGG

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Andrew P. Campbell, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search the

premises and devices located at **1770 S. ROCK ROAD, APT. 1109, WICHITA, KS, 67207,**

hereinafter "RESIDENCE," further described in Attachment A, for the things described in

Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been

since January 2016.  As a Special Agent of the FBI, I am authorized to investigate violations of

laws of the United States, and I am a law enforcement officer with authority to execute arrest and

search warrants under the authority of the United States, including violations of Title 18, United

States Code § § 2252 and 2252A. I have participated in a wide variety of criminal investigations,

to include violent crime, crimes against children, major theft, and other federal crimes. I have

participated in the preparation and execution of search warrants, including, but not limited to,

those involving the sexual exploitation of minors and certain activities relating to material constituting or containing child pornography.

3.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.     This investigation arises from an undercover operation involving the distribution and exchange of child pornography over Kik messenger.  Kik is a free mobile application that can be downloaded on Android or iOS devices, as well as accessed via a desktop computer, that permits users to communicate anonymously with fellow Kik users. This application allows users to create groups where like-minded individuals can chat/text other users and post videos/images. Kik creates a unique name for each individual. Each user has the ability to create a screen name which can be changed at any time.

5.     From 11/06/2020 to 12/09/2020, Online Covert Employee ("OCE") Dustin Grant, who is a member of the FBI Child Exploitation Human Trafficking Task Force in Salt Lake City, Utah, was connected to the Internet in an online undercover capacity in Salt Lake City, Utah.  As part of an undercover investigation into online groups engaged in the trading of child pornography, OCE Grant posted online bulletin messages on Chatzy. Chatzy is a free application providing private chat rooms, which, based on OCE Grant's experience and information gathered from other sources, are frequented by individuals who have a sexual interest in children and incest.  OCE Grant posted bulletin messages offering to trade child pornography images,

2

intending to attract individuals with a sexual interest in children.  OCE Grant would respond to certain messages and provide his OCE Kik screen name, then utilize the instant messaging application Kik to communicate with subjects. On Kik, OCE Grant had created a persona of a father of a nine year old daughter. OCE Grant would then record the online activity, chats, and images identified within Kik.

6.      On 11/06/2020, an individual with the Kik profile identifier "handsome8765", using the screen name "logy box" contacted OCE Grant via Kik and communicated his sexual interests in children.  Communications between this subject and OCE Grant occurred primarily on 11/06/2020 and 11/07/2020, with subsequent attempts at contact by the subject continuing until 12/09/2020, as reflected in the chat history below. This user also sent via Kik multiple videos/images of nude prepubescent age children being sexually abused by adults and posing in sexually explicit positions, as reflected in the chat history below, which started on 11/6/2020 at 3:45pm MST:

OCE: Hey wat r u into?

HANDSOME8765: Family taboo and incest and uou, You, Young

OCE: Same. I'm looking for other parents who are active into young incest, no limits

HANDSOME8765: Hot

OCE: I like 0-12

HANDSOME8765: Nice, Can I see a pic

OCE: R u a parent?

HANDSOME8765: I say 1 to 14, I wish i was a parent

OCE: U American?

HANDSOME8765: Hope ok, Yea, USA

OCE: U active with anyone young?

HANDSOME8765: I wish I was what about you

OCE: I have a 9 yo daughter I'm active with

HANDSOME8765: Dang may i see a pic, if ok

OCE: Looking for parents or OC

HANDSOME8765: OC means

OCE: Original Content

HANDSOME8765: Cool

OCE: Wats the yungest vids u have

HANDSOME8765: I don't have any at the moment ended up having to get rid of them when i updated my phone

OCE: Too bad

HANDSOME8765: I love to see one at least if ok

OCE: Need to trust people first, too risky

HANDSOME8765: I can understand that

OCE: Too many fakes

HANDSOME8765: Thats true, your not a cop are you or someone pretending cause I'm not

4

OCE: No

HANDSOME8765: Sweet

OCE: Y

HANDSOME8765: Im not any of them i try to stay away from them

OCE: So u don't even have a sample

HANDSOME8765: I can try and find one buy might be hard

OCE: Have to be safe

HANDSOME8765: Yea i know what you mean

HANDSOME8765: [Image sent on November 6, 2020 at 3:53 p.m. using Mobile LTE, of a nude female, age difficult, and male engaged in a sex act]

HANDSOME8765: Found something close. I think. You ok. Can I see yours then

OCE: Looks like adult porn. I'm looking for Original Content or stuff I've never seen

HANDSOME8765: I mean they are a little over what you like, but not by much

OCE: I can't even tell

HANDSOME8765: [Video sent on November 6, 2020 at 4:10 p.m. using WIFI IP 172.58.68.112, of a nude female, age difficult, and male engaged in a sex act]

HANDSOME8765: At least that what it said. So may i see one then if ok. You ok. You haven't responded. I did find a picture of one young. I have send you a few things already.

OCE: You send adult porn. I'm not looking for adult porn

HANDSOME8765: [Image sent on November 6, 2020 at 4:21 p.m. using WIFI IP 172.58.68.112, of a young prepubescent age girl exposing her nipple.]

HANDSOME8765: That was the one pic i could find. Sorry for sending adult porn to you it didn't say that

OCE: Shit dude, u sendin stuff like that and want pics of my dau

HANDSOME8765: Sorry I don't really have anything. I can leave if you want. I can leave right now and wish you th best of luck getting a hold of someone that does have what you are looking for

OCE: ?

HANDSOME8765: Im sorry I don't have anything good for you

OCE: Ok

HANDSOME8765: I did try, is the effort enough

OCE: Lol, not how this works

HANDSOME8765: I understand, but you at least see you can trust me right, if not i understand

OCE: Anyone can send adult porn

HANDSOME8765: True but what about the last pic i sent

OCE: I don't get anything out of this

HANDSOME8765: You didn't like the last pic u sent I

OCE: Seen it before

HANDSOME8765: Oh My bad that's all i could find, I don't know where else to look

OCE: It's ok later

HANDSOME8765: You have any ideas where i can look

HANDSOME8765: We could always say i owe you big time if i got to see

6

HANDSOME8765: Sorry for asking im sure you have seen alot

HANDSOME8765: But i understand only pic for pic

HANDSOME8765: If i get something you be first to know

OCE: Ok

HANDSOME8765: Ok as in owe you one or ok as in you be first to know when i get some

OCE: Get some

HANDSOME8765: Understood

OCE: k

HANDSOME8765: K i got some, so we can trade (sent on November 7, 2020 at 3:51 p.m. using Mobile LTE)

OCE: Depends wat u have

HANDSOME8765: [Image sent on November 7, 2020 at 4:00 p.m. using Mobile LTE depicting a nude prepubescent age girl and boy being forced to perform oral sex on each other by a nude adult female]

HANDSOME8765: Will that do

HANDSOME8765: Everything ok

HANDSOME8765: Hope its a yes

HANDSOME8765: If not then I give up

HANDSOME8765: Taking awhile to respond hope you are ok

OCE: That's ok, not the best

HANDSOME8765: May I see then if ok

7

OCE: Idk dude. Im really not getting anything out of this. I'm looking for OC or other parents

HANDSOME8765: If you show me one i can send more i figure we trade back to back, trust is key right

OCE: Nah not looking for trades. I have stuff. Do u have anything yunger or is that it

HANDSOME8765: I have younger

OCE: How yung?

HANDSOME8765: Young

OCE: How young??

HANDSOME8765: I think maybe 5 and older

OCE: U ever had sex with a kid

HANDSOME8765: No i haven't, I thought I told you that before

OCE: I delete everything

HANDSOME8765: Fair, I understand that, I do the same

OCE: Asl? I'm in Utah

HANDSOME8765: Ks, Wish I was in Utah with you

OCE: Me too. Hard to find local pervs

HANDSOME8765: True

OCE: How old r u?

HANDSOME8765: 29 you, How old are you

OCE: 35

8

HANDSOME8765: Cool

OCE: U have access to kids

HANDSOME8765: No i don't, You do right

OCE: My dau

HANDSOME8765: Nice

OCE: She's with me now

HANDSOME8765: Hot Love to see

OCE: We will c

HANDSOME8765: Ok Hope i can soon

OCE: If u have stuff I've never seen

HANDSOME8765: [**Image sent on November 7, 2020 at 9:06 p.m. using WIFI IP 68.102.169.88, depicting a nude toddler age girl being orally penetrated by an adult male**]

OCE: Do u have the video?

HANDSOME8765: Yea but its encrypted i can't download it properly

OCE: ?Wdym Where did u find it

HANDSOME8765: I got it from someone on Chatzy but its encrypted

OCE: Weird

HANDSOME8765: I know

OCE: Where do u usually find your stuff and store it

HANDSOME8765: Well i got it from a person on Chatzy, I keep it secure

9

OCE: I keep my stuff in Mega

HANDSOME8765: True, theres also dropbox

OCE: Hold on brb [This response is sent on November 7, 2020 at 9:12pm. Subsequent communications below continue intermittently until December 9, 2020.]

HANDSOME8765: Ok what you doing

HANDSOME8765: Hope it wasn't serious

HANDSOME8765: So what happened

HANDSOME8765: If ok to ask

HANDSOME8765: You did tell me you brb

HANDSOME8765: Guessing you are busy

HANDSOME8765: Hope you are ok

HANDSOME8765: What up

OCE: Sry been busy

HANDSOME8765: It's all good, so may i see some then

HANDSOME8765: If ok, I can understand the part about busy since close to holidays

HANDSOME8765: You on

HANDSOME8765: Haven't gotten anything from you yet

HANDSOME8765: You ok

HANDSOME8765: Love to see

HANDSOME8765: Some pics and vids

10

7.      These communications reflect initial direct communications with OCE grant over a roughly 24 hour period, wherein the Kik user "Handsome8765" indicated familiarity with Chatzy, indicated he had previously received child pornography from other users, had previously stored child pornography on another phone and now "keep[s] it secure," sought depictions of the purported minor daughter of OCE Grant's profile, and provided images of child pornography to OCE Grant as part of a "pic for pic" exchange. However, the Kik user "Handsome8765" continued to message OCE Grant's profile requesting child pornography as late as 12/09/2020.

### Identification of Kik user "HANDSOME8765"

8.      The FBI sent a subpoena to Kik requesting subscriber data for this account. The Kik subscriber data revealed the following:

> FIRST NAME: logy
> LAST NAME: box
> USERNAME: Handsome8765
> EMAIL: logybox234@yahoo.com
> REGISTRATION DEVICE: Samsung smartphone (Android)
> REGISTRATION DATE: 8/12/2014

9.      Kik also provided login information, showing IP addresses used to log in to the account. As noted in the chat history above, some instances of the distribution of images occurred over a mobile network versus a residential IP address. However, the IP address associated with the distribution of child pornography (notated in the chat above) included 68.102.169.88 on 11/7/2020 at 9:06pm.

11

10.     The IP address 68.102.169.88 was operated by Cox Communications. A subpoena to Cox Communications for the subscriber assigned that address at the time of the distribution of child pornography revealed the following subscriber information:

> Robert Ybarra
> 1770 S. Rock Rd, Apt 1109  **[THIS IS THE TARGET RESIDENCE]**
> Wichita, KS 67207-5179
> 316-351-7379
> 316-393-9749

11.     Database searches for people connected to the address revealed Robert Lee Ybarra (born in 1990) lives at the residence with Christopher James Boales (born in 1995). Searches of publicly available information revealed multiple Facebook photos depicting Ybarra and Boales together with apparent family members.

12.     On 3/4/2021, a physical surveillance of the RESIDENCE identified a gray 2009 Ford Fusion displaying Kansas license plate 667EDW, registered to Ybarra.  Parked next to the Fusion was a white 2009 Chevrolet Cobalt sedan displaying Kansas license plate 854FVH, registered to Boales.

13.     On 4/19/2021, physical surveillance of the RESIDENCE showed both Ybarra and Boales using Apartment 1109's exterior entrance.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

14.     I know from speaking with more experienced investigators that individuals who are interested in the sexual exploitation of children will frequently use child pornography to satiate their prurient sexual desires. I know that these individuals will frequently use or access

12

their child pornography in private, either in their own home or within secure areas of a home, including workshops, garages. While evidence of child pornography activities is often found on devices within the residential area of such individual's home, it would not be uncommon to find evidence of those same activities within the individual's car or garage/workshop.[1]

15.     From speaking with more experienced investigators, I also know that individuals who are interested in the sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography.  The communications captured in this investigation demonstrate this characteristic.

16.     From speaking with more experienced investigators, I know that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain evidence and artifacts of such activity. I also know that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time.[2] Typically, the individual will keep the device(s) close-by,

---

[1] *See, e.g., United States v. Marshall Seitter*, District of Kansas (Wichita) case 6:17-CR-10041-JTM (where child pornography was found on a harddrive in defendant's car and device from his workspace); *United States v. Michael Paul Murphy*, District of Kansas (Wichita) case 6:19-CR-10041-JWB (where child pornography was found in defendant's truck).

[2] *See United States v. Shields,* 458 F.3d 269, 279 (3d Cir. 2006) (noting nine month delay in applying for search warrant would not have supported staleness challenge due to context of child pornography offender behavior along with evidence of continuing offenses); *United States v. Schesso,* 730 F.3d 1040 (9th Cir. 2013) (finding delay of 20 months did not render probable cause stale in context of investigation); *see also United States v. Allen,* 625 F.3d

13

in part for immediate access for sexual gratification and to maintain secure control over the contraband material.  In this case, despite the SUBJECT claiming he deletes the child pornography, that deletion appears to have been because of changing phones. The chats indicate the SUBJECT has familiarity with child pornography, venues for obtaining or storing child pornography, and is able to seek and obtain child pornography reasonably quickly. Moreover, the chats indicate the SUBJECT also has familiarity with secure storage. Evidence of such familiarity and access is likely to be found on the device(s) located at the RESIDENCE.

17.     From my training and experience, I know that individuals who engage in communications with other individuals relating to the sexual exploitation of children will frequently retain information about these contacts, which can be used later to obtain access to other groups or forums relating to child pornography, or for exchanging additional child pornography.  This characteristic is demonstrated in the chat, presented above.

18.     Further, I believe that the user evinces the qualities associated with child pornographers, outlined above. In this instance, to post the child pornography observed by Law Enforcement over the Kik Application, the user had to first seek out the child pornography and exert control over it.  I expect the device(s) used by operator of the accounts described above

---

830, 842-43 (5th Cir.2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 117-19 (1st Cir.2008) ( concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale).

14

have previously (and will probably still contain, as discussed below) additional child pornography, links to child pornography websites, or artifacts showing access to child pornography. I further expect the device(s) used by or in the possession of the user will probably contain evidence of communications, or attempts to communicate, with other individuals interested in the sexual exploitation of children, i.e., child pornographers.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

19.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the RESIDENCE, as described in Attachment A, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

20.     *Probable cause.*  I submit that if a computer or storage medium is found on the RESIDENCE, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

  a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

15

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the RESIDENCE because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other

16

external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. Information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g.,

17

running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

22.   *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded

18

on the storage media, and to prevent the loss of the data either from accidental or intentional

destruction.  This is true because of the following:

    a.   The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.   Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the RESIDENCE.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.   Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

23.    *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying

storage media that reasonably appear to contain some or all of the evidence described in the

warrant, and would authorize a later review of the media or information consistent with the

warrant.  The later review may require techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24.     Because two people share the RESIDENCE as a residence, it is possible that the RESIDENCE will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

25.     I submit that this affidavit supports probable cause to believe that the RESIDENCE located at 1770 S. Rock Road, Apt. 1109, Wichita, KS and described in Attachment A does contain evidence of violations of 18 U.S.C. § 2252 and 2252A and therefore respectfully request that this Court issue a search warrant for the search of the premises and devices located at 1770 S. Rock Road, Apt. 1109, Wichita, KS, being more specifically described in Attachment A which incorporated by reference as if fully set forth herein, authorizing the seizure and search of the items described in Attachment B herein.

Respectfully submitted,

Andrew P. Campbell
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May 6 , 2021.
telephonically

20

KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

21

# ATTACHMENT A

*Property to be searched*

The residence and devices located 1770 S. Rock Road, Apt. 1109, Wichita, KS, 67037,

further described as follows:

Apartment 1109 is located in Building 11 within the Brookwood Apartment Complex, at 1770 S. Rock Road. Building 11 is identified by a number on the side of the building (depicted below on right). The apartments are identified by number on the door to each apartment, and each apartment has a separate exterior door. Apartment 1109 is identified by number on the door showing 9. The apartment is located on the first floor, and is accessible from an exterior vestibule shared with apartment 1110.

 

## **ATTACHMENT B**

*Property to be seized*

1.      Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), in any format or medium, including computer files, prints, negatives, drawings, and paintings.

2.      Any and all child erotica, in any format or medium, including documents, writings, and images or videos of children that do not qualify as child pornography but evince a sexual interest in children.

3.      Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the software or programs or applications contained therein, that may be or are used to:

   a.   distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

   b.   seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

   c.   communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and

2

    d.   any and all data or information on the device which may relate to subparagraphs 3a, 3b, and 3c, including data or information that may reveal indicia of ownership, access, or use.

4.     Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

5.     Any and all cameras, film, videotapes or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

6.     Any and all documents, records, or correspondence, in any format or medium (including, but not limited to; envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

7.     Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

3

8.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

10.      Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.